OPINION
{¶ 1} The instant dispute on appeal concerns the application of the Village of Powhatan Point, Belmont County, Ohio, Local Ordinance No. 1147.09(j) to Appellants, Richard Ryncarz, et. al. Appellants consist of village property owners that evidently have recreational vehicles, such as motor homes and campers, in use on their zoned property within the village. For the following reasons, we must uphold the ordinance and affirm the decision of the trial court.
 {¶ 2} The instant matter began when Appellants received notice of violation of the above ordinance. They were ordered by Appellees, the village and the village Mayor William A. Pratt, to comply with the ordinance or be, "subject to further action."
 {¶ 3} In response, Appellants filed a complaint for declaratory judgment and injunctive relief in the Belmont County Court of Common Pleas. Appellants claimed that the ordinance was inapplicable. They also sought to have the ordinance declared unconstitutional as applied.
 {¶ 4} Appellees subsequently filed a motion for summary judgment as to Appellants' claims. Appellants filed a brief in response, and Appellees filed a reply. The trial court held a hearing on the summary judgment motion.
 {¶ 5} Thereafter, the parties stipulated that the trial court could determine Appellants' claims for injunctive relief and declaratory judgment based on Appellees' motion for summary judgment, Appellants' response, Appellees' reply, the evidence submitted to the trial court, and the arguments of counsel at the hearing.
 {¶ 6} On June 11, 2004, the trial court rendered its opinion in Appellees' favor, and on June 21, 2004, the trial court issued a judgment entry granting Appellees' motion for summary judgment.
 {¶ 7} Appellants timely appealed to this Court from the June 21, 2004, Judgment Entry. They raise three assigned errors on appeal.
 {¶ 8} Declaratory judgment actions allow a court to construe and assess the validity of a legal instrument, statute, or ordinance. R.C. §2721.03 authorizes any person whose rights, status, or legal relations affected by a legal instrument, ordinance, etc., to file a complaint for declaratory judgment.
 {¶ 9} When a declaratory judgment action is disposed of by summary judgment, a court of appeals reviews the matter de novo. King v. WesternReserve Group (1997), 125 Ohio App.3d 1, 5, 707 N.E.2d 947.
 {¶ 10} Summary judgment is proper when:
 {¶ 11} "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc. v. AppliedCos. (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129.
 {¶ 12} The Village of Powhatan Point, Belmont County, Ohio, Local Ordinance No. 1147.09 at issue herein prohibits the use of "[t]railers, camp cars or other portable vehicles, on or off wheels that are to be used or designed to be used for human habitation," except as set forth in five specific exceptions. (July 2, 2002, Complaint, Exh. A.) The trial court held that the ordinance prohibited the use of Appellants' recreational vehicles on their properties, and for the following reasons, this Court agrees.
 {¶ 13} Appellants' three claimed errors on appeal consist of two main arguments. First, Appellants claim that the ordinance is inapplicable to their types of recreational vehicles and thus, they claim that the ordinance is unconstitutional as applied. Secondly, they raise what is essentially a selective enforcement argument. Appellants' three assignments of error assert:
 {¶ 14} "The trial court committed error in granting the motion for summary judgment because the appellees applied ordinance No. 1147.09(j) in an unconstitutional manner with respect to the appellants' recreational vehicles
 {¶ 15} "The trial court committed error in granting the motion for summary judgment because ordinance No. 1147.09(j) does not apply to the appellants' recreational vehicles
 {¶ 16} "The trial court committed error in granting the motion for summary judgment because the appellees arbitrarily, unreasonably, and capriciously enforced ordinance No. 1147.09(j) against the appellants and not against others in similar circumstances"
 {¶ 17} Appellants' first two assignments of error are basically intertwined. Appellants claim that the ordinance is unconstitutional as applied because it does not adequately define what it prohibits. Appellants also claim that, in reading the statute as a whole, it was never intended to prohibit the types of vehicles in use on Appellants' properties. Because these both rely on Appellants' arguments as to "statutory interpretation," we will address these together.
 {¶ 18} When the language of a statute is clear and unambiguous, an appellate court must apply the statute as written and make no additional inquiry into either the legislative intent or the consequences of the trial court's interpretation. State v. Hurd (2000), 89 Ohio St.3d 616, 618,734 N.E.2d 365. The same holds true of an ordinance, and the words in a statute or ordinance must be given their ordinary meaning and must be construed, "according to the rules of grammar and common usage." Petrov. N. Coast Villas Ltd. (2000), 136 Ohio App.3d 93, 97, 735 N.E.2d 985, citing R.C. § 1.42.
 {¶ 19} Local Ordinance No. 1147.09 provides in pertinent part:
 {¶ 20} "The following uses will not be permitted in any zone district in the Village:
 {¶ 21} "* * *
 {¶ 22} "(j) Trailers, camp cars or other portable vehicles, on or off wheels that are to be used or designed to be used for human habitation, except as follows:
 {¶ 23} "(1) In duly authorized trailer courts, which trailer courts may be established and operated in Districts 4 and 5, but only after submitting detailed plans for the same to the Planning Commission and after the establishment and operation has been approved by the Planning Commission.
 {¶ 24} "(2) In that portion of District 2 which is north of Captina Creek and west of State Route 7.
 {¶ 25} "(3) In that portion of District 3 that is west of the unnamed alley lying west of Main Street, North of Ramsey Street, south of Hopple Street, and east of the west boundary line of District 3.
 {¶ 26} "(4) In District 4.
 {¶ 27} "(5) In that portion of District 5 which is north of Captina Creek west of State Route 7.
 {¶ 28} "The uses authorized under paragraphs (2), (3), (4) and (5) herein shall be permitted only if situated and occupied subject to all other provisions of the Zoning Ordinance; only if they have separate and individual taps for water and sewage; only if they comply with all State and local laws pertaining to the same; only if situated on a tract of land of a minimum of 5,000 square feet; and only if blocked and enclosed underneath." (July 2, 2002, Complaint, Exh. A.)
 {¶ 29} Appellants initially assert that their "trailers" or "campers" constitute "recreational vehicles," and that the ordinance does not prohibit the use of "recreational vehicles." Thus, they claim the ordinance cannot be applied to them. In support of this argument, Appellants rely on the lack of definitions for the terms employed in the ordinance.
 {¶ 30} While no definitions are found in the ordinance at issue, state statutes do contain definitions for the terms used here. R.C. § 4501.01(Q) defines recreational vehicles:
 {¶ 31} "(Q) `Recreational vehicle' means a vehicular portable structure that meets all of the following conditions:
 {¶ 32} "(1) It is designed for the sole purpose of recreational travel.
 {¶ 33} "(2) It is not used for the purpose of engaging in business for profit.
 {¶ 34} "(3) It is not used for the purpose of engaging in intrastate commerce.
 {¶ 35} "(4) It is not used for the purpose of commerce as defined in49 C.F.R. 383.5, as amended.
 {¶ 36} "(5) It is not regulated by the public utilities commission pursuant to Chapter 4919., 4921., or 4923. of the Revised Code.
 {¶ 37} "(6) It is classed as one of the following:
 {¶ 38} "(a) `Travel trailer' means a nonself-propelled recreational vehicle that does not exceed an overall length of thirty-five feet, exclusive of bumper and tongue or coupling, and contains less than three hundred twenty square feet of space when erected on site. `Travel trailer' includes a tent-type fold-out camping trailer as defined in section 4517.01 of the Revised Code.
 {¶ 39} "(b) `Motor home' means a self-propelled recreational vehicle that has no fifth wheel and is constructed with permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping.
 {¶ 40} "(c) `Truck camper' means a nonself-propelled recreational vehicle that does not have wheels for road use and is designed to be placed upon and attached to a motor vehicle. `Truck camper' does not include truck covers that consist of walls and a roof, but do not have floors and facilities enabling them to be used as a dwelling.
 {¶ 41} "* * *
 {¶ 42} "(e) `Park trailer' means a vehicle that is commonly known as a park model recreational vehicle, meets the American national standard institute standard A119.5 (1988) for park trailers, is built on a single chassis, has a gross trailer area of four hundred square feet or less when set up, is designed for seasonal or temporary living quarters, and may be connected to utilities necessary for the operation of installed features and appliances."
 {¶ 43} Appellants appear to argue that, because the statute is so specific and the ordinance is so broad and without specific definitions of its terms, the ordinance cannot be interpreted in a manner which applies to them. Contrary to Appellants' arguments, however, this Court finds that the ordinance is sufficiently clear in identifying what it prohibits even though broadly drafted. Although the ordinance does not provide specific definitions, the ordinance defines the prohibited uses in its own terms in the body of the ordinance. It prohibits the use of, "[t]railers, camp cars or other portable vehicles, on or off wheels that are to be used or designed to be used for human habitation," on Appellants' properties. While the statutory definitions of these types of motor vehicles are certainly not incorporated into the body of the ordinance, they are instructive in that they clearly show that these vehicles fit within the prohibitions found in the village ordinance. The prohibited use of portable vehicles designed for human habitation is sufficiently understandable based on the ordinary meaning of the terms it employs. Further, the ordinary meanings of its terms include and prohibit the use of Appellants' recreational vehicles, which unquestionably constitute portable vehicles designed for human habitation, at their zoned properties.
 {¶ 44} Next, in a related argument, Appellants assert that the ordinance must be read in its entirety to construe the scope of its application and, once read in the manner Appellants urge, cannot be applied to them. Although Appellants do not claim that any of the five ordinance exceptions apply, they assert that the exceptions express the drafters' intent, which did not encompass the use of Appellants' recreational vehicles and thus, cannot intend to prohibit the use of these vehicles. Specifically, Appellants claim that the ordinance was solely designed to prohibit the use of "mobile homes" and cannot be used, then, to prohibit recreational vehicles or travel trailers.
 {¶ 45} Once again, state statutes do provide a definition of the term "mobile home," at least that definition intended by the state legislature: "(O) `Mobile home' means a building unit or assembly of closed construction that is fabricated in an offsite facility, is more than thirty-five body feet in length or, when erected on site, is three hundred twenty or more square feet, is built on a permanent chassis, is transportable in one or more sections, and does not qualify as a manufactured home as defined in division (C)(4) of section 3781.06 of the Revised Code or as an industrialized unit as defined in division (C)(3) of section 3781.06 of the Revised Code." R.C. § 4501.01(O).
 {¶ 46} As earlier stated, the ordinance here does not provide definitions of the terms specified within it. Appellants seek to have us define the ordinance by applying the exceptions listed in the ordinance.
 {¶ 47} We agree that the exceptions do not apply herein. However, and regardless of the focus of the exceptions, the body of the ordinance broadly but sufficiently prohibits the use of portable vehicles designed for human habitation on Appellants' properties. This clearly encompasses the use of Appellants' recreational vehicles by the ordinance's own terms. As such, there is no need to analyze the scope of the exceptions because the main body of the ordinance adequately describes the prohibited uses. Appellants' arguments as to interpretation of the ordinance fail because the ordinance does not need or call for interpretation, only application of its plain meaning. Certainly, then, the "reverse interpretation" that Appellants would have us undertake, to interpret the ordinance through its exceptions, would be error on a number of levels. Thus, this argument also lacks merit.
 {¶ 48} We must note, here, that all of the above arguments revolve around "use" of these vehicles on the zoned property. At no time did any party argue, and we do not address, whether mere storage of the vehicles on the property triggers application of the ordinance. Because no party raised this potential issue, and have stipulated that the record contains all evidence necessary to decide this matter in summary judgment, the parties have stipulated, apparently, that the citations given Appellants would otherwise be valid, but for their arguments as to constitutionality in this matter.
 {¶ 49} In their last assignment, Appellants assert that the ordinance was unconstitutionally levied against them since the ordinance has not been used against other individuals similarly situated. This is essentially a selective enforcement allegation.
 {¶ 50} A selective enforcement claim is based on an alleged violation of the Due Process or Equal Protection Clauses. The Equal Protection Clause requires the legislature to regulate impartially. Euclid v.Fitzthum (1976), 48 Ohio App.2d 297, 300, 2 O.O.3d 278, 279,357 N.E.2d 402. However, the conscious exercise of some selectivity in enforcement is not a violation of the United States Constitution. Instead, the discrimination must be "intentional or purposeful" in order for selective enforcement to constitute unconstitutional discrimination.State v. Flynt (1980), 63 Ohio St.2d 132, 134, 17 O.O.3d 81,407 N.E.2d 15; Bohach v. Advery, 7th Dist. No. 00 CA 265, 2002-Ohio-3202, at ¶ 32.
 {¶ 51} In order to prove a selective enforcement claim, Appellants bear a heavy burden and must establish:
 {¶ 52} "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." Flynt at 134, 17 O.O.3d 81, 407 N.E.2d 15, citing United States v. Berrios (C.A.2, 1974), 501 F.2d 1207, 1211; see also State v. LaMar (2001), 95 Ohio St.3d 181, 767 N.E.2d 166, at 192.{¶ 53} Appellants here merely assert that there are other individuals in the village with recreational vehicles on their property, but that these other individuals did not receive notice of an ordinance violation. Appellants do not allege that the ordinance was enforced against them and not others based on race, religion, or the desire to prevent the exercise of their constitutional rights. Instead, they assert that Appellees were acting in bad faith.
 {¶ 54} Appellants allege that copies of the village meeting minutes depict Appellees' bad faith. Specifically, Appellants argue that Appellees focused on enforcing the ordinance against Riverview Road residents and not others.
 {¶ 55} Unfortunately for Appellants, the meeting minutes they rely on in making this argument were submitted for the first time in the appellate court. They were never submitted for the trial judge's consideration prior to her decision. Pursuant to App.R. 12(A)(1)(b), this Court determines an appeal on its merits based only on the assignments of error, the record on appeal, and unless waived, information presented in oral argument. "* * * [T]he Court of Appeals is bound by the record before it and may not consider facts extraneous thereto." Paulin v.Midland Mut. Life Ins. Co. (1974), 37 Ohio St.2d 109, 112, 307 N.E.2d 908;Bank One Lima, N.A. v. Altenburger (1992), 616 N.E.2d 954, 958,84 Ohio App.3d 250. Thus, this Court will not consider the meeting minutes since they are not in the trial court's record.
 {¶ 56} Based on the foregoing, Appellants have failed to meet their substantial burden to establish selective enforcement. There is no evidence in the record depicting that the Appellees' enforcement of this ordinance has been invidious or in bad faith.
 {¶ 57} In conclusion, all of Appellants' assignments of error lack merit and are overruled. We hereby affirm the trial court's decision awarding summary judgment in Appellees' favor.
Donofrio, P.J., concurs.
Vukovich, J., concurs.